Filed 8/23/16  P. v. Ruiz CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LONGINOS LUIS REYES RUIZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B260423<br>(Super. Ct. No. 1431137)<br>(Santa Barbara County) |

A jury convicted appellant Longinos Luis Reyes Ruiz of four counts of oral copulation or sexual penetration of a child under 10 years of age (Pen. Code, § 288.7, subd. (b)),[1] two counts of dissuading a witness (§ 136.1, subd. (c)(1)), one count of aggravated sexual assault of a child by rape (§ 269, subd. (a)(1)), two counts of aggravated sexual assault of a child by oral copulation (*id.*, subd. (a)(4)), and two counts of sexual intercourse with a child under 10 (§ 288.7, subd. (a)).[2]  He was sentenced to prison for a determinate six-year term on the two counts of dissuading a witness and an

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] In addition, when polled jurors unanimously indicated that they had found appellant guilty of an additional count of oral copulation or sexual penetration of a child under 10 and an additional count of aggravated sexual assault of a child by rape.  After the jury was dismissed, the trial court discovered that jurors had filled out and signed both "guilty" and "not guilty" verdict forms.  The trial court declared a mistrial as to those counts, and the prosecutor dismissed them.

indeterminate term of 110 years to life on the remaining counts. The trial court stayed punishment on the three counts of aggravated sexual assault of a child. (§ 654.)

Appellant contends that the trial court erred by using an inappropriate jury unanimity instruction and by admitting and instructing on evidence of uncharged offenses. In addition, he contends that the evidence did not support two separate convictions for dissuading a witness or his convictions in general. We affirm.

## FACTS

### *Prosecution Evidence*

Yolanda G. has three daughters: one, Y.G., with appellant, and two, M.G. and the victim (V.G.), from a previous relationship.[3] Yolanda was arrested in March 2011 and subsequently deported. Her daughters stayed with appellant for about 10 months. V.G. and M.G. then moved in with Yolanda's sister Carmela G.

When they were staying with appellant, the girls at first slept in their own bedroom. After Yolanda was arrested, somebody else slept in that bedroom and the girls slept in appellant's bedroom. Later, when appellant's partner, Florencia Reyes, moved in with him, the girls slept in the living room.

V.G. testified that appellant "used to touch [her]" at night in his room when they were alone. He would touch her under her clothes on her breasts. "A couple times" he touched her inside her vagina. He would bring her to his room and take off her clothes. Sometimes she woke up while he was undressing her. One time while she was asleep he took a photo of her in which her breasts and vagina were visible. She learned about the photo because she saw it on his cell phone.

Once, V.G. woke up and appellant was on top of her with his penis inside her vagina. She tried to get away, but could not. He removed his penis and "[g]reen goo" came out. She ran out and took a shower to clean herself.

---

[3] We refer to Yolanda G. and her sister Carmela G. by their first names to avoid confusion. No disrespect is intended.

V.G. told appellant to stop doing that. He told her she could not call her mother because her mother was in Mexico. He threatened to hurt her mother and her family.

Appellant also touched V.G.'s vagina with his tongue. He did this six or more times. She told him to stop. She "would say [she] wanted to call [her] mom and he would say" that "he would just not take care of [the girls] or get any food or anything like that."

Appellant tried to put his penis in V.G.'s mouth and bottom but was unable to do so because she ran away.

When V.G. and M.G. returned to Carmela's house after spending a week with appellant, M.G. told Carmela that she did not want to stay with him because he had touched V.G. while they were naked. V.G. was eight or nine years old at the time. Carmela "got really angry," called appellant, and told him that she "wanted the girls back and all their papers." Appellant laughed. He said that V.G. "was a whore" and "she liked it."

Carmela called Yolanda, who was in jail at the time. Carmela told Yolanda about the abuse and asked if she should report it to the police. Yolanda said she would do it when she came back. When she returned several months later, V.G. told her that appellant "had touched her and done something with his tongue." Yolanda went to the police and filed a complaint.

Detective Michael Huffman interviewed appellant. Appellant told the detective that V.G. "has a really advanced mind," which he described as "hornier," because "she sees lots of things . . . that is not good." He described an incident in which she told him that she saw a man "[do] things" to Yolanda. She demonstrated to appellant what she had seen: "She threw me to the bed and I told her: 'Tell me . . . . How did [Yolanda] do it?' [V.G.] got on top of me and grabs me and . . . kisses me . . . . Then I told [Yolanda]: 'Just see what you has caused, the example that you are giving to the girl . . . .'" Appellant also told the detective that he thought a teenage boy had "messed

3

with" V.G. and that she had seen a pornographic DVD that he [appellant] forgot to take out of the player.

Appellant stated that another time he was "really tired" after working all day in the field. V.G. "[did] a strip-tease" and "got naked." She got on top of him and "pull[ed]" him. She "put her butt on [his] part," rubbing it, and he "[took] her away because [he] couldn't stand it anymore." Appellant told her, "'Don't do those things.'" She then "started to take pictures of herself" with his phone. She asked him, "'Do you like it?'" The next morning, he confronted Yolanda about "what [she was] causing."

That evening, appellant was lying down wearing only his trunks and V.G. "grabbed" his penis, trying to take it out "[as] if, wanting to put it in there." He had an erection, and "that's why [he] would cover himself with the trunks." He told her, "'This is wrong.'" She had him take a picture of her while she was naked. She told him, "'You missed right there,'" indicating her vagina, and "as she was opening up, [he] took the picture." He then told her, "'let me sleep.'"

Appellant told the detective, "She asked me to lick her," but "she still [had] things there, well, poop, sort of say. . . . Then I told her: 'Well, [h]ow am I going to do that?' And she would put it on me and I would just move to the side. . . . I was lying down. But she was the one who was doing. And she would put her [private] part . . . [i]n the nose [and] in the mouth." Appellant told the detective he put his nose and tongue inside her vagina but "[o]nly a tiny bit."

Detective Steven Ridge interviewed V.G. She told him that appellant took her to his bedroom, removed her clothes, and touched or licked her "private parts"— meaning her chest, vagina, and buttocks—a total of "10 to 11 times." Appellant told her that if she told anyone, "he would hit her or kill her."

Investigator Jeffrey Ellis interviewed V.G. seven months later. She told him that every day when she was lying down appellant would get on top of her and his penis would touch her vagina. When she tried to resist, he would make threats to harm her family. Sometimes he would stop when somebody would knock on the door. Other times he would stop and tell her to clean herself up. There would be "green goey stuff"

4

on the tissue paper she used.  She once saw this green gooey stuff coming out of his penis when he was cleaning himself up.

*Defense Evidence*

Florencia Reyes and Esther Sandoval testified in appellant's defense. Reyes has a child with appellant and lived with him for about three months while V.G. was also living there.  Sandoval worked with appellant in the broccoli fields.  She and her partner stayed in a bedroom in appellant's apartment around the same time.  According to Reyes and Sandoval, appellant had a "normal" relationship with V.G., who never seemed scared of him or complained about mistreatment.

DISCUSSION

*Jury Unanimity Instruction*

The trial court instructed the jury on the unanimity requirement using CALCRIM No. 3500.[4]  Appellant contends that this was error and that the trial court instead should have used the alternative instruction on unanimity in CALCRIM No. 3501.  Appellant did not object to the trial court's use of CALCRIM No. 3500.  In fact, he actively participated in a discussion of that instruction, successfully advocating that the trial court reword it to apply to all counts.  He has forfeited any challenge to it here. (*People v. Milosavljevic* (2010) 183 Cal.App.4th 640, 648.)

Regardless, his challenge is meritless.  CALCRIM No. 3501 repeats the language of CALCRIM No. 3500 but, in addition, allows jurors to reach a guilty verdict if they "all agree that the People have proved that the defendant committed all the acts alleged to have occurred during [the applicable] time period [and have proved that the defendant committed at least the number of offenses charged]."  (CALCRIM No. 3501, first bracketed alteration added.)  This instruction was developed in response to "cases involv[ing] the so-called 'resident child molester' [citation], who either lives with his

---

[4] The instruction was as follows:  "The People have presented evidence of more than one act to prove that the defendant committed these offenses.  You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed."

victim or has continuous access to him or her. In such cases, the victim typically testifies to repeated acts of molestation occurring over a substantial period of time but, lacking any meaningful point of reference, is unable to furnish many specific details, dates or distinguishing characteristics as to individual acts or assaults." (*People v. Jones* (1990) 51 Cal.3d 294, 299.)

That was not the case here. In closing argument, the prosecutor explained the specific conduct involved for most of the charged sexual offenses.[5] For instance, regarding the first three counts, he told the jury that V.G. "mentioned three specific instances of oral copulation with the defendant. She told Detective Ridge in her forensic interview three different times where she was able to remember some specifics." There was no reason to instruct using CALCRIM No. 3501.

### Uncharged Offenses

Over appellant's objection, the trial court granted the prosecution's motion to admit evidence of uncharged offenses—specifically, his alleged sexual assaults of V.G. prior to Yolanda being deported—under subdivision (b) of section 1101 of the Evidence Code. Pursuant to CALCRIM No. 375, the trial court instructed the jury, "You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the offenses" and only "for the limited purpose of deciding whether or not the defendant acted with the intent to commit the sexual offenses charged in this case for sexual gratification or defendant had a motive to commit the sexual offenses alleged in this case or defendant had a common plan or scheme when he committed the sexual offense alleged in this case or the defendant did

---

[5] The one exception was the last two counts of oral copulation or sexual penetration of a child under 10. The prosecutor told the jury that V.G. "said that the defendant put [his] fingers inside of her [vagina]. She said that happened more than once." The prosecutor explained to the jury that these counts were specifically based on "[t]he first time [appellant] sexually penetrated [V.G.], [and] the last time he sexually penetrated her." As the prosecutor pointed out, appellant admitted that his nose was in V.G.'s vagina and that he "possibly" touched her there as well. Thus, any error from not using CALCRIM No. 3501 for these counts was harmless.

6

not act with mistake, by mistake or accident or defendant reasonably and in good faith believed the alleged victim consented."

The trial court also admitted the uncharged offense evidence under section 1108 of the Evidence Code.  Pursuant to that section and *People v. Villatoro* (2012) 54 Cal.4th 1152, the trial court instructed using a modified CALCRIM No. 1191 that the jury could conclude that appellant had the propensity to commit the charged sexual offenses based on evidence of his other charged and uncharged sexual offenses if proven beyond a reasonable doubt.

Appellant, citing the "danger" and "unfairness" of propensity evidence, asserts that the trial court's admission of uncharged offense evidence and use of CALCRIM No. 375 "allowed the jury to reach a verdict based on proof less than 'beyond a reasonable doubt.'"  (Capitalization omitted.)  To the extent appellant challenges the use of propensity evidence to prove sexual offenses, the Supreme Court has rejected this argument.  (*People v. Falsetta* (1999) 21 Cal.4th 903.)  It is equally well established that uncharged crimes are admissible to show material facts such as a plan or design, that they may be proven by a preponderance of the evidence, and that a jury instruction to that effect does not conflict with the reasonable doubt standard.  (See *People v. Medina* (1995) 11 Cal.4th 694, 763.)  The trial court did not abuse its discretion by admitting evidence that, prior to the sexual offenses with which appellant was charged, he committed similar sexual offenses against the same victim.  (See *People v. Ewoldt* (1994) 7 Cal.4th 380, 403-405.)

*Sufficiency of the Evidence*

Appellant contends that there is insufficient evidence to support more than one count of dissuading a witness and, more generally, any of his convictions.  "When the sufficiency of the evidence to support a conviction is challenged on appeal, we review the entire record in the light most favorable to the judgment to determine whether it contains evidence that is reasonable, credible, and of solid value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.] 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the

7

reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' [Citation.] Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Elliott* (2012) 53 Cal.4th 535, 585.)

Regarding the convictions for dissuading a witness, V.G. testified that appellant orally copulated her at least six times when she was in the third grade. When asked if she ever told him to stop, she said, "Yes." She "*would say* [she] wanted to call [her] mom and he *would say* something bad." (Italics added.) Specifically, "[h]e *would say* he would just not take care of [her and her sisters] or get any food or anything like that." (Italics added.) By stating that appellant "would say" these things rather than that he "said" them, V.G. implied that he said them on more than one occasion when he abused her. Moreover, V.G. told Detective Ridge that appellant "threatened to hit and other times . . . threatened to kill her" "if she was to tell" about the abuse. This is substantial evidence that appellant committed the offense of dissuading a witness at least twice.

Regarding appellant's contention that the evidence was insufficient to support any of his offenses, we disagree that V.G.'s testimony lacked credibility. That the young victim of repeated sexual assaults perpetrated at home by her stepfather was somewhat inconsistent about minor details or even the frequency of abuse is unsurprising. She consistently stated that appellant abused her at least six times—more than enough to sustain the convictions here—and provided specific, plausible details. Nor were appellant's statements to the police "inherently incredible." While his story that V.G. performed a "strip-tease" and made sexual advances to him was a transparent attempt to avoid blame, there was nothing implausible about his admission of inappropriate sexual contact with her.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


TANGEMAN, J.

Rogelio R. Flores, Judge

Superior Court County of Santa Barbara

_____


Richard C. Gilman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.